UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:08CV-P478-H

JOSEPH S. GONCALVES, JR.                                                                PLAINTIFF

v.

STEVE BESHEAR *et al.*                                                                  DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Joseph S. Goncalves, Jr., filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the instant action will be dismissed.

### I.

Plaintiff brought this action while a pretrial detainee at the Hardin County Detention Center (HCDC). He sues the following Defendants in their individual and official capacities: Steve Beshear, Governor of Kentucky; John D. Rees, former Commissioner of the Kentucky Department of Corrections (KDOC); Thomas Simpson, KSP Warden; Dorcas F. Figg, Nelson County Jailer; and Louis B. Lawson, HCDC Jailer. As relief, he seeks damages and injunctive relief.

Plaintiff claims that the Commonwealth of Kentucky has become a "complex dictatorship" as there is no distinction between pretrial detainees and convicted prisoners. He broadly claims that through an agreement among Defendants, pretrial detainees are transferred to the KSP until they "'cooperate' and plead guilty to the crimes charged or complete their trials."

Plaintiff contends that he was arrested in Nelson County on February 5, 2008, and erroneously indicted on the following day by a Nelson County grand jury (Indictment No. 08-CR-028). He claims that he was detained on "$250,000 bail and parole type conditions, instead of on their home incarceration program and, thus, losing everything including civil rights as designed by defendants to make pretrial detainees 'cooperate' and plead guilty." He reports that due to his detention in the Nelson County Jail, he (1) lost his job at A-Z Pawn Shop earning $6.50 an hour; (2) lost his residence and property in Leitchfield; (3) was denied the use of his cell phone; (4) was "denied exculpatory evidence and the preservation of same"; (5) was denied the right to vote; (6) was denied the right to have contact and sexual relations with the opposite sex; (7) was denied the right to communicate with a friend via the U.S. Postal Service; (8) was denied his "life choice diet" (a lactose-free, vegetarian diet) and a "nutritionally balanced diet" and retaliated against for grieving the matter;[1] (9) was denied legal materials; (10) was denied grievance procedures and retaliated against for using them; (11) was denied meaningful contact visits with any friends or family; (12) was denied daily recreation, sunlight and fresh air; (13) was forced to labor in the facility; and (14) was "physically, mentally and emotionally abused by the metal tables, chairs and bunks, concrete wall and floors, 2 inch thick hard and horribly uncomfortable 2 foot wide sleeping mats."

Plaintiff reports filing several grievances about the conditions at the Nelson County Jail and receiving "bold retaliation for same by defendants as the conditions are designed to make pretrial detainees 'cooperate' and plead guilty." He reports filing grievances on March 26, 27

---

[1] On review of attachments, it appears Plaintiff is alleging that he was retaliated against by the "jail," which he claims tampered with a meal by placing some dairy or a laxative in it. Defendant Jailer Figg responded to a grievance on this issue advising Plaintiff that no one had tampered with his food and directing Plaintiff to provide a list of what he could eat so that the jail could try to accommodate.

2

and 28 and on April 9, 11, 14, 15, and 16, and reports sending a letter to this Court expressing "extreme difficulty" in exhausting administrative remedies at the jail.[2] Then, on April 22, Plaintiff was transported from Nelson County Jail to KSP, a maximum security prison for convicted inmates, pursuant to a "Memorandum of Agreement"/"Contract Housing Agreement" between Nelson County and the KDOC.

On May 5, 2008, he was issued three KSP disciplinary reports for alleged conduct occurring at the Nelson County Jail on March 31 (using vulgar and obscene language directed toward a Nelson County Jail Captain) and April 18 (refusing a direct order from a Nelson County Deputy and threatening the same deputy). Attachments reveal that on May 12, 2008, he was found guilty of the disciplinary charge of threatening a deputy and received a penalty of 45 days of disciplinary segregation and that he pleaded guilty to the remaining two disciplinary charges and received a penalty of 15 days in segregation for each charge.

Plaintiff claims that while incarcerated in KSP from April 22, 2008, through June 27, 2008,[3] he was subjected to the following conditions: (1) invaded by hypodermic needles to test for TB and sexually transmitted diseases; (2) had his head and face shaved weekly; (3) denied meaningful contact with assigned counsel 200 miles away;[4] (4) denied the right to be present

---

[2]Additionally, the following is a response to a grievance requesting an appeal of a previously filed multi-page grievance: "I did not receive your 4 page grievance until 4/11/08. I have sent it to Department of Corrections (4/11/08) and am waiting for their reply back to it." Although the response is unsigned, it appears to have been written by Defendant Jailer Figg based on a review of the handwriting of other responses attached to the complaint that he did sign.

[3]For a two-week period from May 14 through 28, Plaintiff was housed at the Kentucky Correctional Psychiatric Complex (KCPC) for evaluation.

[4]In an affidavit attached to the complaint, Plaintiff avers that from April 22, 2008, at least through June 12, 2008, the date of the affidavit, "Though I have tried several times, I have yet to even be able to speak with my assigned counsel by phone or receive a written response to my corresponces to him."

during all proceedings in his criminal case; (5) denied meaningful access to legal materials; (6) denied the right to address the government for grievances; (7) "physically, mentally and emotionally abused by the metal tables, chairs, bars & bunks, concrete walls & and floors, 2 inch thick hard and horrably uncomfortable sleeping mats with no pillow"; (8) isolated; (9) harassed over his last name and crime upon arrival; (10) denied daily recreation, shower, sunlight and fresh air; (11) denied meaningful contact visits with friends and family; (12) denied the right to communicate with a friend via the U.S. Postal Service; (13) denied the right to have contact and sexual relations with the opposite sex; (14) denied the right to vote; (15) denied "potentially exculpatory evidence and preservation of same"; and (16) denied his property, lost his residence, and lost his job.

On June 27, 2008, Plaintiff was transferred from KSP to the HCDC for a "court trip," and by court order he was directed to be held at HCDC during the pendency of his suit to prepare for trial. Plaintiff contends that upon arriving at HCDC, he was denied his "diet"; began filing grievances; was "punished and told that he had better stop harrassing & treatening staff like he did at Nelson Co. Jail or he would find himself in trouble again"; and was placed in "isolation under the guise of a medical watch." Plaintiff reports that he filed grievances/requests on June 28 and July 3, 4, 6, and 8, and that on July 9, he filed a request that he would not file anymore grievances if they would stop "punishing" him.[5]

On August 2, 2008, Plaintiff alleges that he and all inmates in HCDC Pod 344 were disciplined because someone flushed half of a blanket down a toilet. He claims that Defendant

---

[5]In the attached July 9, 2008, Inmate Request Form, Plaintiff writes, "Okay, Capt. Reynolds' punishment has worked. I will except your food trays as I would like to shower and need to use the phone and work with counsel to prepare for trial. I will not file any more grievances. I will do as told."

Jailer Lawson, as discipline, took their blankets, sheets, and towels for 24 hours; restricted television and telephone use for 48 hours; had them in lock down for 48 hours; and removed all games, indigent stamps and envelopes, and indigent hygiene products.

Plaintiff states that on August 4, 2008, he requested medical attention for muscle cramps, bone pain, dizziness, loss of sleep, chest pains and loss of energy. On August 9, he was seen by "medical" and advised to drink more water, exercise, take naproxen for 10 days, and to submit another request if his pain continued.

Plaintiff additionally claims that treatment of pretrial detainees at HCDC is "so bad that 'discipline' for its 'state side' inmates includes being placed on the 'county side.'" He alleges that at the HCDC he was denied daily recreation, fresh air, and a nutritionally balanced diet proportioned for adults; denied contact visits; denied access to courts; and denied contact and sexual relations with the opposite sex. He also alleges that the HCDC had 2-inch thick mats and metal bunks, tables and chairs with concrete floors and walls, "less TV stations," and florescent bulbs that caused headaches. On August 11, 2008, Plaintiff reports receiving medical records from Dr. Trivette regarding his special diet but that the jail continued to refuse his diet.[6] He further alleges that he was denied access to this Court because "they" refuse to advance funds so that he can file his claim and/or have a copy of it.

Finally, Plaintiff contends that there is a conspiracy to violate citizens' rights by the Commonwealth of Kentucky.

---

[6]After being detained at the HCDC for over a month, Plaintiff filed a grievance advising, "I was told that I need a medical record to receive a lactous free, vegitarian diet." To the grievance he attached a medical record from a physician at the Kentucky Correctional Psychiatric Center indicating "Lactose Free Vegetarian Diet." In response to the grievance, "Brenda/ Medical" wrote, "I have spoken to the Doctor regarding this diet order and this was a diet of choice not for medical reasons; There-fore we will not honor it."

**II.**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

## III.

### A. *Equitable relief*

Plaintiff requests various forms of equitable relief. First, Plaintiff requests the Court to order his release from illegal detention and dismissal of the charges against him with prejudice and to declare "14th Amendment Violations so fundamentally unfair that charges MUST be dropped with prejudice." "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Because Plaintiff is seeking an immediate or speedier release from custody, the § 1983 claim for such injunctive relief cannot lie.

Plaintiff additionally requests the federal government to conduct the prosecution of his state criminal case. A federal court, however, "should not interfere with a pending state criminal proceeding except in the rare situation where an injunction is necessary to prevent great and immediate irreparable injury." *Fieger v. Thomas*, 74 F.3d 740, 743 (6th Cir. 1996) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). "*Younger* abstention in civil cases requires the satisfaction of three elements. Federal courts should abstain when (1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims." *Hayse v. Wethington*, 110 F.3d 18, 20 (6th Cir. 1997).

The Commonwealth of Kentucky has an important state interest in adjudicating criminal matters. In a recent filing, Plaintiff reports he has been convicted. He, therefore, still has appellate and post-conviction avenues available in which to raise his constitutional claims, and he has failed to show that the Kentucky state courts are unable to fully and fairly adjudicate his claims at this time. In light of the available avenues through which to raise a constitutional challenge, this Court will not interfere with the state-court proceedings.

Finally, Plaintiff asks the Court to issue an injunction ordering "federally controlled 21st century prison reform to the Commonwealth of Kentucky"; mandating "immediate prison reform measures through the State of Kentucky incordance with federal prisons & conditions for pretrial detainees until the Ky.D.O.C. prison reform can be federally aided and regulated"; and creating "distinctions between convicted persons and detainees other then detainees being treated with harsher punishment . . . [such as giving detainees] the 'Home incarceration program' like Ky.'s parolees . . . ."

The Court is without power to mandate that Kentucky's prisons be controlled by the federal government. Moreover, it is not for this federal Court to decide whether state pretrial detainees should be incarcerated in a corrections facility or placed on a home incarceration program. That determination is best left to the state legislature and/or state court.

For all of the foregoing reasons, the claims for equitable relief must be dismissed.

**B.     *Damages***

   ***1. Official-capacity claims against Beshear, Rees, and Simpson***

Defendants Beshear, Rees, and Simpson are officers of the Commonwealth of Kentucky. A state, its agencies, and state officials sued in their official capacities for money damages are

not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Furthermore, official-capacity claims for damages against state officials are barred by the Eleventh Amendment to the United States Constitution. *Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Accordingly, the official-capacity claims for damages against Defendants Beshear, Rees, and Simpson must be dismissed.

### *2. Individual-capacity claims against Governor Beshear*

Plaintiff appears to seek to hold Defendant Beshear liable based on his position as Governor. "Respondeat superior[7] is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In other words, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Here, Plaintiff fails to allege any facts showing that Governor Beshear encouraged any specific incidents or implicitly authorized, approved or knowingly acquiesced to any

---

[7]Respondeat superior is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

unconstitutional conduct. That Defendant Governor Beshear may have been aware of Plaintiff's complaints is not enough to subject him to liability under § 1983. Accordingly, all claims against Governor Beshear will be dismissed for failure to state a claim upon which relief may be granted.

### 3. Remaining individual-capacity claims

Plaintiff divides his complaint into six broad claims, though claims two, three, and four, contain a plethora of claims therein. The Court will address the claims as succinctly as possible.

#### a. Transfer from Nelson County Jail to Kentucky State Penitentiary

As Plaintiff's first and second claims, he contends that pursuant to an agreement between the KDOC and Nelson County Jail, on April 22, 2008, in order to make him cooperate and plead guilty and in retaliation for filing several grievances against the Nelson County Jail, he, a pretrial detainee, was transferred from a the jail to KSP, a maximum security prison for convicted inmates, located approximately 200 miles away from Nelson County, where his attorney was located and where he was indicted.

##### i. due process

With respect to the first claim, a due process claim, the federal Constitution, standing alone, does not confer upon prisoners a "liberty interest" in any particular form of confinement, *see Hewitt v. Helms*, 459 U.S. 460, 467-68 (1983), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 472-73 (1995), and "the Due Process Clause is not implicated when either a convicted prisoner or a pretrial detainee is transferred from one prison to another." *Davis v. Vandercook*, No. 97-6317, 1999 WL 98464, at *2 (6th Cir. Jan. 29, 1999) ((citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *Boudin v. Thomas*, 543 F. Supp. 686 (S.D.N.Y. 1982) ("It is clear that a state court detainee has no right to pick what jail he or she will be held in until trial

10

just so long as the detainee is not unreasonably hampered in the preparation of the defense of the charge by the assignment to a particular institution.). The Court concludes that Plaintiff has failed to show any due process violation in being transferred and, therefore, fails to state a claim upon which relief may be granted with respect to that claim.

### *ii. retaliation*

Plaintiff's second claim appears to be that he was retaliated against and transferred to KSP for filing grievances and contacting the Court.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Plaintiff has met the first prong as he was engaged in protected conduct by filing grievances and contacting the Court. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (holding that prisoner has a First Amendment right to file a grievance against prison officials on his own behalf).

With respect to the second prong, "ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) (citing *Smith v. Yarrow*, 78 F. App'x 529, 543-44 (6th Cir. 2003)). However, if a plaintiff suffered a number of foreseeable consequences that inhibited the his ability to engage in protected conduct, then a transfer could be considered an adverse action that would deter a person of ordinary firmness from engaging in protected conduct. *See Siggers-El v.*

*Barlow*, 412 F.3d 693, 702 (6th Cir. 2005). In *Siggers-El*, "[a]s a result of the transfer, the Plaintiff not only lost his high paying job that he needed in order to pay his attorney, but the transfer also made it more difficult for his attorney to visit with or represent him because he was moved further away from her." *Id.* at 702. In the instant case, however, Plaintiff did not lose a job that he needed to pay his attorney to represent him in his criminal action, and while it is reasonable to conclude that it would be more difficult to contact his attorney in person, Plaintiff was housed at KSP for only two months, Plaintiff does not allege any actual injury to his criminal action during that time period, and Plaintiff was shortly transferred to a county facility closer to where his criminal action was proceeding. Because Plaintiff did not suffer any foreseeable consequences that inhibited his ability to access the courts, he fails to meet the second prong of a retaliation claim.

Further, as to the third prong (a causal connection between the protected conduct and the adverse action), Plaintiff used vulgar and obscene language toward a Nelson County Captain on March 31, and disobeyed a direct order from and threatened a Nelson County Deputy on April 11. The Court concludes that the transfer shortly thereafter on April 22 was motivated, not by Plaintiff's complaints, but by his conduct.

For these reasons, the retaliation claim must be dismissed.

### b. *Conditions of confinement*

As his third, fourth, and fifth claims, Plaintiff challenges numerous conditions of confinement during his incarceration at the Nelson County Jail, KSP, and HCDC.

#### i. *deliberate indifference to basic human needs*

"While a pretrial detainee does not enjoy protection of the Eighth Amendment, the Eighth Amendment rights of prisoners are analogous to pretrial detainees' due process rights

12

under the Fourteenth Amendment." *Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). A prison's conditions of confinement are sufficiently grave if they fall beneath "the minimal civilized measure of life's necessities" as measured by a "contemporary standard of decency." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A prison official inflicting such conditions acts with a sufficiently culpable state of mind if he does so with "deliberate indifference." *Wilson*, 501 U.S. at 303.

While "a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees," *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983), and while there might be an Eighth Amendment violation should an inmate be deprived of "'nearly all fresh air and light,'" *Walker v. Mintzes*, 771 F.2d 920 (6th Cir. 1985) (citation omitted), Plaintiff makes no such allegation. Indeed, Plaintiff's complaint indicates only that he was denied "dayly recreation, sunlight, and fresh air," not a total or near total deprivation, and he fails to indicate how the daily lack thereof endangered his health or otherwise caused injury. Moreover, in an attachment to his complaint, he indicates that at KSP, he lived in a 6' X 10' cell with two small windows (approx. 4" X 18"); that he and other inmates in segregation had recreation in front of their cells; and that once a week they were permitted to go outside into the fresh air and sunlight. The Court cannot find a deprivation of constitutional

proportions here. *See, e.g., Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("This court has never set a minimum amount of time a prisoner must have access to outdoor recreation."); *Pastorius v. Romer*, No. 96-1126, 1996 WL 528359, at *1 (10th Cir. Sept. 17, 1996) (affirming the district court's dismissal of an action as frivolous where the inmate alleged he was denied fresh air and direct sunlight), *cert. denied*, 520 U.S. 1199 (1997); *Townsend v. Padula*, No. C/A0:0421879-RBH, 2005 WL 3591984, at *3 (D.S.C. Dec. 30, 2005) (finding a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation).

As to Plaintiff's allegation that he was denied a nutritionally balanced diet at the Nelson County Jail and HCDC because he was not given a lactose-free, vegetarian diet, he is not entitled to a "life choice diet" (as he describes it), and he does not indicate any injury as a result of being denied this "life choice diet" rising to the level of an Eighth Amendment violation. While Plaintiff indicates that he attached a physician's order for a lactose-free, vegetarian diet to a grievance filed at HCDC, the record reveals that "Brenda / Medical" responded to and denied the grievance advising that she spoke to the doctor who indicated that the diet was one of choice by Plaintiff, not one for medical reasons. Additionally, Plaintiff alleges no personal involvement in or acquiescence by Defendant Jailer Lawson in this decision and further fails to allege any Hardin County policy or custom which caused him any harm.

Plaintiff has shown no injury or denial of a basic human need in receiving a TB test and having blood drawn to test for sexually transmitted diseases. To the contrary, given the contagious nature and danger of those diseases, KSP was being responsive to Plaintiff's health. *See, e.g., Hasenmeier-McCarthy v. Rose*, 986 F. Supp. 464, 467 (S.D. Ohio 1998) ("It is beyond dispute that tuberculosis represents a public health threat to both inmates and prison

14

personnel."). The Court further finds that Plaintiff has failed to demonstrate an Eighth Amendment violation when Defendant Jailer Figg took away bedding and privileges for 24 to 48 hours in response to someone flushing a towel down the toilet.

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Plaintiff challenges numerous conditions, some which the Court highlighted above and others which are listed in section I of this opinion. While these conditions may have been discomforting to Plaintiff, he has not shown them to be extreme or egregious enough to be violative of the Eighth Amendment. Moreover, many of his contested conditions are merely a normal result of being charged with a crime and detained (*e.g.*, losing his job and being denied access to his cell phone and residence) and do not constitute the deprivation of Eighth Amendment proportions.

Thus, Plaintiff has failed to set forth any Eighth/Fourteenth Amendment claim with respect to his various conditions of confinement.

### ii. *freedom of association and to correspond*

"[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

"An inmate does not retain rights inconsistent with proper incarceration," *Overton*, 539 U.S. at 131 (citations omitted), and "freedom of association is among the rights least compatible

15

with incarceration." *Id.* "Some curtailment of that freedom must be expected in the prison context." *Id.* Plaintiff broadly claims that he was denied meaningful contact visits at each of the institutions in which he was housed, but he does not allege that he was denied other forms of visitation and does not demonstrate a constitutional violation. *See Block v. Rutherford*, 468 U.S. 576, 589 (1984) ("We hold only that the Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility.");[8] *Bell*, 441 U.S. at 547 n.28 ("There is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates. Indeed, it may be that in certain circumstances they present a greater risk to jail security and order.").

Plaintiff additionally claims that he was denied the right to correspond by mail with a "friend." Prisoners are entitled to retain those First Amendment rights not inconsistent with their status as prisoners or with legitimate penological goals. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). In the instant case, the "friend" to which Plaintiff is referring is a woman who was being housed at the HCDC, while Plaintiff was at the Nelson County Jail and KSP, and who was

---

[8]In *Block*, 468 U.S. at 587, the Supreme Court opined:

> There are many justifications for denying contact visits entirely, rather than attempting the difficult task of establishing a program of limited visitation such as that imposed here. It is not unreasonable to assume, for instance, that low security risk detainees would be enlisted to help obtain contraband or weapons by their fellow inmates who are denied contact visits. Additionally, identification of those inmates who have propensities for violence, escape, or drug smuggling is a difficult if not impossible task, and the chances of mistaken identification are substantial. The burdens of identifying candidates for contact visitation-glossed over by the District Court-are made even more difficult by the brevity of detention and the constantly changing nature of the inmate population. Or a complete prohibition could reasonably be thought necessary because selectively allowing contact visits to some-even if feasible-could well create tension between those allowed contact visits and those not.

16

named as one of two people with whom Plaintiff allegedly acted in concert with respect to the charges listed in his indictment. The Court does not find a constitutional violation in the Jailers's and Warden's decisions to deny Plaintiff's requests to correspond with a co-conspirator during the course of criminal proceedings. *Turner v. Safley*, 482 U.S. 78, 93 (1987) (finding the prohibition on inmate-to-inmate correspondence reasonably related to valid corrections goals). "[P]rison administrators . . ., and not the courts, [are] to make the difficult judgments concerning institutional operations.'" *Id.* at 89 (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977)).

The Court must, therefore, dismiss the freedom of association and to correspond claims for failure to state a claim upon which relief may be granted.

### *iii. retaliation for grieving diet issue at the Nelson County Jail*

Plaintiff additionally alleges that the "jail" tampered with a meal by placing some dairy or a laxative in it in retaliation for his grieving the "life-choice diet" issue. Plaintiff has failed to attribute this conduct to Defendant Jailer Figg, the only Nelson County Jail official or employee named as a defendant, and fails to allege any policy or custom on the part of Nelson County which caused his injury. Accordingly, the retaliation claim must be dismissed.

### *iv. denied contact with counsel at KSP*

Plaintiff alleges in an affidavit that for over a month while at KSP, "[t]hough I have tried several times, I have yet to even be able to speak with my assigned counsel by phone or receive a written response to my corresponces to him." It is ambiguous whether Plaintiff was allowed to call his counsel several times but was merely unable to get in touch with him or whether he requested to contact his counsel but was denied those requests.

17

Even if the Court were to construe the claim as one that he was prevented from calling his counsel, he fails to state a claim against Defendant Warden Simpson. As discussed earlier in the opinion with respect to Defendant Governor Beshear, "respondeat superior is not a proper basis for liability under § 1983." *McQueen*, 433 F.3d at 470. "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "[L]iability under § 1983 must be based on active unconstitutional behavior." *Shehee*, 199 F.3d at 300.

Plaintiff fails to allege any facts showing that Defendant Simpson encouraged any specific incidents or implicitly authorized, approved or knowingly acquiesced to any unconstitutional conduct with respect to Plaintiff's access to counsel. Accordingly, all claims against Defendant Simpson will be dismissed for failure to state a claim upon which relief may be granted.

### *v. access to courts*

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury. *Lewis v. Casey*, 518 U.S. 343 (1996). No actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id.* at 356; *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) ("Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline.").

Plaintiff claims that he was not allowed to file grievances, was denied legal materials, was denied meaningful access to counsel, and was refused the advance of funds to file this action. He has not alleged, however, that these denials resulted in any nonfrivolous claim being lost or rejected or that the presentation of any nonfrivolous claim is being prevented. Any access-to-courts claim that Plaintiff may be trying to present must, therefore, be dismissed for failure to state a claim upon which relief may be granted.

### c. Conspiracy

As his sixth and final claim, Plaintiff contends that inherent in the first five claims "there is a conspiracy to violate federal civil rights of United States by the Commonwealth of Kentucky." To wit, "The Judicial Process is a farse as there is NO intention of taking most cases to trial, or any case as they routinely schedule 10 to 30 cases or more for trial on the same day before the same judge." He concludes that "It is impossible for any citizen to receive a fair trail when at the mercy, or rather when facing the awsome power of this Complex dictator ship. U.S.C.A. 1, 4, 5, 6, 8, 13, 14 & 15."

Plaintiff has not shown or alleged that any of the named Defendants played a role in cases going to trial or in scheduling trials. Plaintiff's foregoing conspiracy claim is broad and conclusory and fails to state a claim upon which relief may be granted. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.").

**IV.**

For all of the foregoing reasons, the instant action must be dismissed. The Court will, therefore, enter a separate Order of dismissal.

Date:

cc: Plaintiff, *pro se*
　　 Defendants
　　 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
　　 Nelson County Attorney
　　 Hardin County Attorney
4412.005